[No. 2936.   July 19, 1926.   Rehearing Denied
Oct. 21, 1926.]

ALBUQUERQUE LUMBER CO. v. TOMEI et ux.

[250 Pac. 21.]

SYLLABUS BY THE COURT

1. An executory contract for the sale of land, reserving legal title in the vendor until payment, does not create a vendor's lien.

[1] 39Cyc p. 1794 n. 87.   [2] 38Cyc. p. 1402 n. 19.   [3] 40CJ p. 111 n. 77, 82.   [4] 39Cyc p. 1303 n. 19 New.   [5] 3CJ p. 718 n. 50.   [6] 40CJ p. 125 n. 3; p. 127 n. 55 New. [7] 4CJ p. 1020 n. 77.   [8] 40CJ p. 114 n. 7.   [9] 40CJ p. 487 n. 4 New.

2. If evidence is admitted "subject to objection" and later ruled out without objection by the party offering it, he is deemed to acquiesce in the ruling.

3. Recission of executory contract reserving legal title, for vendee's default, after a material-man's lien has attached to the equitable interest, does not result in extending the lien to cover the fee.

4. The vendee's interest under an executory contract for sale of land, wherein title is reserved, is not a fixed or determinable undivided interest therein.

5. Theories of the case, not brought to the attention of the trial court, cannot be considered, on appeal.

On Motion for Rehearing.

6. Code 1915, § 3327, requiring disclaimer of liability by the owner of an interest in land upon which an improvement is being made, applies only to the particular contract or scheme of improvement in progress or contemplation at the time.

7. Not prejudicial error, in case tried without jury, to exclude newspaper items, offered as bearing upon the owners' knowledge of an improvement, where the owners testified that they had not read them.

8. Code 1915, §§ 3319, 3321, 3327, relating to liens, construed, and **held** that, where the vendee in an executory land contract is the builder merely in the sense that he

is the person who causes the improvement to be made, he is not the vendor's agent to bind the vendor or his property.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit by the Albuquerque Lumber Company against Frank Tomei and wife to foreclose a materialman's lien. From the judgment, both parties appeal. Affirmed and remanded, with directions.

George S. Klock and M. J. McGuinness, both of Albuquerque, for appellant.

Rodey & Rodey, of Albuquerque, for appellees.

### OPINION OF THE COURT

WATSON, J. In this cause there are an appeal and

a cross-appeal from a judgment foreclosing a material-man's lien. As appears by the findings of the trial court, the facts are as follows: The Albuquerque Lumber Company furnished materials between July 14 and July 23, 1921, to William Kruegel, who, during said time, was in possession of the premises in question under a duly recorded executory contract for the purchase thereof from Frank Tomei and wife, which contract was on said July 23, in full force and effect, and upon which there had been paid the sum of $1,680. The materials were ordered by said Kruegel and used by him in constructing a dance hall upon the property. The vendors, Tomei and wife, had no knowledge that Gruegel was engaged in the construction of the building until July 23, 1921, and within a few hours after obtaining such knowledge posted nonliability notices on the property. The complaint sought judgment against Kruegel and against Tomei and wife, foreclosure of the materialman's lien, and sale of the property improved. The trial court, having found the facts aforesaid, rendered judgment establishing a lien upon the equitable interest of Kruegel, foreclosing the same, and ordering the same sold, subject to the legal title and to all the contract rights of Tomei and wife. From such judgment, the Albuquerque Lumber Company, plaintiff below, has appealed, and Tomei and wife, defendants below, have taken a cross-appeal.

While appellant assigns 43 errors and discusses them under nine heads, we think its contentions may be deduced to two main propositions: (1) Appellant should have been given a lien upon the Tomei interest in the property; (2) if not entitled to a lien upon the Tomei interest, appellant was entitled to a lien upon an undivided interest in the premises in the proportion which the payments actually made by the vendee bore to the whole agreed purchase price.

[1] Before proceeding to determine the questions raised, we pause to note that both parties, as well as the trial court seem to have treated the vendors'

interest in the property as a vendor's lien. In this we
think they are in error. The contract reserved the legal
title in the vendors until payment of the agreed price.
Had the actual interest been a vendor's lien, the situa-
tion would have been quite different. Stearns-Roger
Mfg. Co. v. Aztec Co., 14 N. M. 300, 93 P. 706. This
matter seems, however, to have little practical bearing
on the case. Such as it has will be hereinafter referred
to. While the court, by finding 12, held that "the de-
fendants * * * have a prior and superior lien
under the said land contract * * * to the material-
man's lien" and in the decree adjudged the same, it
was also provided in the decree that—

"Nothing in this decree contained shall affect the rights
and remedies of the defendant Frank Tomei by reason of
his legal ownership of the property * * * under and by
the terms of the real estate contract."

Thus, despite the technical inaccuracy, the case was
disposed of on the correct theory.

In contending that appellant should have been given
a lien upon the vendors' interest, it is first urged that
it appears from the evidence that the vendors had
knowledge of the improvement in question. This was
a question of fact upon which the evidence was con-
flicting. The trial court found to the contrary. As we
consider that finding supported by substantial evi-
dence, it cannot be disturbed.

[2] On this question of knowledge, it is urged that
the court erred in excluding certain news items appear-
ing in Albuquerque papers, which prominently men-
tioned the improvement being made, and to which
newspapers the vendors admitted being subscribers.
This evidence, when offered, was admitted "subject to
objection." The cause, having been submitted, was
taken under advisement for several days, and the court
then announced his disposition of the case and his find-
ings substantially as thereafter filed. In this announce-
ment the court sustained the objections to the news

items. Appellant made no objection and took no exception to the ruling, and must be deemed to have acquiesced in it.

[3] There was evidence to the effect that about July 23, the day the nonliability notices were posted by the vendors, Kruegel, the vendee, absconded and abandoned the premises, and that appellees thereupon took possession of them and still retained it at the date of the trial. The court refused appellant's request to find these facts, and to conclude therefrom that the vendors had elected to rescind the contract. Urging this as error, appellant argues that the vendors could not both rescind the contract and enforce the payments; that the effect of the decree is to force appellant, if it would protect its lien, to make the remainder of the payments; that the vendors' lien grows out of the contract and ceases to exist when the contract is rescinded. Whatever might be the merit of the argument if we were really concerned with a vendor's lien, it seems plain that it is inapplicable when we consider, as we must, that the vendor's interest involved is not a lien, but the legal title. Whether, by a declaration of forfeiture warranted by the terms of the contract, the vendors could have cut off appellant's lien, it is unnecessary to consider. We know of no principle, however, upon which a rescission, or an attempted rescission, could be held to enlarge or extend the rights of the materialman. The decree leaves the contract in force just as it was when the materialman's lien accrued. This could not, in our view, have prejudiced the rights of appellant.

It is further urged that the court, having expressly found, at appellant's request, that Kruegel, the vendee, "was the builder and in charge of the construction of said dance hall," erred in refusing further to find that Kruegel was the agent of the vendors in contracting for the materials, and in using them in the construction of the dance hall. We do not think that

the court intended to find that Kruegel was the "builder" in the sense that the term is used in Code 1915, § 3319. That would be inconsistent with his other findings.

[4] This brings us to the consideration of the second of the contentions above set forth. Appellant complains of the refusal of the court to fix the value of the equitable interest to be sold at $1,680, arguing that, because this amount had been paid upon the purchase price, the vendee had obtained an interest to that extent in the property, and that the court should have ordered a sale of an undivided interest in the property, bearing the same proportion to the whole interest that the amount paid bore to the whole purchase price. While making this argument, appellant disclaims the right to extend its lien beyond the equitable interest of the vendee. We must therefore conclude that it misapprehends the nature of that interest. The vendee's right under the contract was to obtain title to the property by completing the deferred payments. This right according to the contract, might be lost by failing to make the remainder of the payments. In that case, the payments which had been made were to be retained by the vendors as liquidated damages. This is the interest upon which appellant's lien attached under Code 1915, § 3321. Upon this interest, the court recognized the lien and decreed foreclosure and sale. Appellant demanded, in effect, that the court find the vendors' interest to be so much on account of the balance they were still entitled to receive, and the vendee's to be so much on account of the payments already made. To have acceded to this would have been to set aside the contract and make a new one, under which, as each payment was made, the vendee would obtain a proportionate, undivided, indefeasible interest in the property. No authority is cited to this proposition, and we do not think it sound. Appellant points out the reluctance of equity to enforce a forfeiture. There is no doubt about that. The court's decree, however, does not enforce a forfeiture. It orders a sale of the equitable interest. It

recognizes it as subsisting. What that interest may be worth was not for the court to say, but for a purchaser to determine. The court found the sum which had been paid. The value of the interest would be determined by consideration of the worth of the premises in comparison with the payments which the purchaser must still make. At a sale, if there were outside bidders for the equitable interest to the amount of the lien, appellant would be fully protected. If none, he could, for the amount of his lien, step into Kruegel's shoes, and obtain the privilege of completing the payments and perfecting title. Had the court adopted appellant's theory, appellant would have had a lien, not only on Kruegel's interest, but on a substantial part of Tomei's. Having found as it did on the facts, the court could give no lien on the vendors' interest.

Finding no error to appellant's prejudice, we proceed to a consideration of the cross-appeal.

Tomei and wife, vendors, complain of the action of the court in refusing to give them affirmative relief upon a cross-complaint to which appellant, Albuquerque Lumber Company, Kruegel, the vendee, and J. A. Hubbs, Kruegel's trustee in bankruptcy, were made defendants. In the cross-complaint, the executory contract was set up, allegation was made of default on the part of Kruegel and his trustee in bankruptcy under the contract, and the court was asked to adjudge the default, declare the contract void, forfeit all payments and quiet title as against all of the defendants.

Cross-appellants tendered findings of fact and conclusions of law. They therein adhered strictly to the theory of their pleadings, the answer, and the cross-complaint. That theory was (1) that the materialman's lien never attached to the vendors' interest in the property, because the vendors had posted the property as soon as they obtained knowledge of the improvement; and (2) that the vendee's default and the declared forfeiture left no interest to which said lien

could attach, or, if it had attached before forfeiture, it was thus cut off.

[5] In argument here, counsel for cross-appellants now take the position that the "vendor's lien" is superior to the materialman's lien, and that the decree should have provided for a sale of the fee for satisfaction, first, of the vendor's lien, and, second, of the materialman's lien; any surplus to have gone to Krue-, gel, the vendee, or his trustee in bankruptcy. They thus fall into the error mentioned at the outset as to the true nature of the vendors' interest in the property. Their contention in the trial court that their title should be quieted as against the materialman's seems to have been abandoned. They now advance a theory of the case not brought to the attention of the trial court. Such new theory we cannot consider. Cadwell v. Higginbotham, 20 N. M. 482, 151 P. 315.

Counsel for appellant bring to our attention, by the reply brief, a situation which might have raised an important question. Kruegel's trustee in bankruptcy, having been made a defendant in the cross-action, filed a document in which he disclaims interest in the subject-matter of the suit and in the relief sought by any of the parties, and "shows that he has received from Frank Tomei for the benefit of said bankrupt's estate a valuable consideration for the equity of said bankrupt in and to the said premises, and that this trustee on account of such consideration relinquishes any and all claims of right or interest in and to said premises." Counsel now ask on what equitable principle appellant's lien could be cut off by a purchase of the vendee's interest by the vendors. The question is raised too late. The fact of such a purchase was not developed at the hearing, nor in any manner brought to the attention of the trial court, nor its legal consequences urged. Counsel then urged that rescission or attempted rescission in some manner operated to extend the materialman's lien beyond the equitable interest to the fee. They cannot now prevail upon the different and inconsistent

theory that, instead of a rescission of the contract whereby the vendee's interest was destroyed, there was really a purchase of it, and that such purchase was necessarily subject to the lien upon it.

Having found no error to the prejudice of either the appellant or the cross-appellants, we affirm the judgment. The cause will be remanded to the district court, with direction to enforce its decree, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.


On Appellant's Motion for Rehearing.

WATSON, J. It is urged that, in holding that there was substantial evidence to support the court's finding that appellant had no knowledge of the improvement being made, we overlooked important testimony. Prior to the furnishing of the materials in the present case, appellees had been served with process in another suit to establish a lien upon the same premises. That suit reached this court and is reported as Weggs v. Kruegel, 28 N. M. 24, 205 P. 730. The record in that case was in evidence in the present case. According to the complaint in the Weggs Case, the lien was sought under a contract made May 20, 1920, by Kruegel, to alter and repair the building on the premises by installing a new front complete, installing beaver board ceilings, patching floors, and by otherwise repairing and altering the said building, which improvement was completed June 9, 1920. According to the complaint in the present case, the materials were furnished between July 14 and July 23, 1921, to be used, and they were used, in the erection of a dance hall on the westerly end of the premises.

It is argued that it thus conclusively appears that appellees had knowledge in a general way that the premises had been, and were to be, improved. It is also urged that it is not required that knowledge be shown

of each of the steps in the making of improvements, or of each separate contract for labor or materials contributing to them. This may be admitted, without concluding that knowledge of repairs and alterations upon a building on the premises when it was sold necessarily imputed knowledge of intent to erect a new building.

[6] Appellant cites only Raisch et al. v. Helfrich et al., 47 Cal. App. 494, 190 P. 848. This case does not seem to bear upon the question, nor have we found a case in point. On the question of knowledge generally, see 40 C. J. 147. We think that the statute, in requiring disclaimer of liability, has reference to the particular contract or scheme of improvement in progress or contemplation at the time, and that, for instance, knowledge that a vendee intended to erect, or was erecting, a garage on the premises, would not impute knowledge of intention to erect, or erection of, a dance hall on the same premises under a different contract.

[7] It is contended that we were wrong in concluding that appellant acquiesced in the ruling excluding from evidence excerpts from the Albuquerque press relative to the improvement in question. Reconsidering the matter of this evidence, there is perhaps a better reason for overruling the assignment regarding it. We may admit (though not deciding) that these accounts of the improvement appearing in newspapers to which appellees subscribed were competent evidence bearing upon the question of knowledge, and that, if it had been a jury case, it would have been error to exclude them. But this case was tried to the court. Appellees not only testified that they had no knowledge whatever of the improvement being made, but specifically denied having read the newspaper accounts in question. This was no doubt the reason, and the only reason, that the trial judge ruled them out. So long as the court believed the evidence of appellees, the newspaper accounts were entirely unimportant. Whether he ruled them out, or left them in and disre-

garded them, had no bearing upon the result. The ruling, if erroneus, was clearly not prejudicial.

It is contended that, even if Kruegel was not, in the first place, the agent of the appellees in purchasing the materials, appellees' subsequent purchase from Kruegel's trustee in bankruptcy of the vendee's interest was a ratification, having the effect of an original authorization. This contention we cannot consider, as no such theory was suggested in the trial court.

[8] Is is again strongly urged that the finding that Kruegel "was the builder and in charge of the construction of said dance hall" is conclusive that he was the agent of the appellees in what he did. To aid understanding of this point, we here insert pertinent sections of the Code:

"Sec. 3319.    Every person performing labor upon, or furnishing materials to be used in the construction, altera-, tion or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon road or aqueduct to create hydraulic power, or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, and every contractor, subcontractor, architect, builder, or other person having charge of any mining, or of the construction, alteration, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this article."

"Sec. 3321.    The land upon which any building, improvement, or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if at the commencement of the work, or of the furnishing the materials for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered or repaired, but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien."

"Sec. 3327.    Every building or other improvement mentioned in the second section of this article [section 3319], constructed upon any lands with the knowledge of the

owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvements situated thereon."

While section 3319 provides that the "builder * * * shall be held to be the agent of the owner for the purposes of this article," we cannot admit counsel's point. That the builder is to be deemed the agent of the person causing the building to be constructed seems quite plain. We think that the word "owner," in section 3319, has reference to the person causing the building to be constructed. That section contemplates no division of estates as between lessor and lessee, or vendor and vendee. It is sections 3321 and 3327 which contemplate such a situation. It is plain from the latter section that, if an interest is owned by one who did not cause the construction of the building, his interest is not to be subjected to the lien if, within three days after obtaining knowledge of it, he posts notices disclaiming liability for the improvement. That intention is controlling over any apparent inconsistency with section 3319. There is no such inconsistency, however, when the two sections are properly construed. In finding as the trial court did, we think he meant no more than to find that it was Kruegel who caused the building to be constructed. His refusal to find that Kruegel was appellees' agent for such purpose clearly indicates such meaning. If we were to go with counsel's contention, that where the vendee is the builder he is necesasrily the vendor's agent, we should, in such a case, nullify the plain provision of section 3327.

We think, therefore, that this case was properly dis-

posed of, and the motion for rehearing will be overruled. The costs of this appeal will be taxed against appellant, and the costs of the cross-appeal will be taxed against appellees and cross-appellants. The costs of this motion will be taxed against appellant; and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.