213 P.2d 220

PETRAKIS v. KRASNOW et al.

No. 5191.

Supreme Court of New Mexico.

Dec. 27, 1949.

Simms, Modrall, Seymour & Simms, and James E. Sperling, Albuquerque, for appellant.

Robert J. Nordhaus, Rolando Matteucci, Albuquerque, for Charles Ilfeld Co.

Jones & Stiff, Albuquerque, for Grants Building & Supply Co.

SADLER, Justice.

The plaintiff (appellant) prosecutes this appeal from a decree dismissing his complaint under which he seeks to quiet title in himself to certain business property located in the town of Grants, Valencia County, New Mexico, and awarding relief under cross-complaints by way of foreclosure of a mechanic's lien in favor of one defendant (appellee) and like relief to another defendant (appellee) as to a judgment lien.

The controversy resulting in the suit, and later the decree here complained of, arose out of the rescission by plaintiff of an executory contract for the sale by him to Samuel Krasnow and Ida Krasnow, his wife, of some real estate consisting of certain town lots located in the town of Grants, New Mexico, including all improvements on the lots and the business then being conducted there, together with all furniture, fixtures, merchandise and equipment forming a part of such business. The purchase price was $70,000 to be paid in installments as stipulated in the contract. The purchasers actually paid a total of $20,000 including the down payment, together with certain interest on the unpaid balance. Possession was delivered to them on the date of the contract, June 19, 1946, or very soon thereafter. The escrow papers described in the contract consisting, among others, of the executed contract, abstract of title, a special warranty deed from the purchasers to the owner for use in the event of default and the deed from owner to purchasers for delivery when payments were completed, all were deposited with the escrow agent named in the contract. The purchasers were in possession of the premises under the contract from about June 19, 1946, until May 5, 1947. They defaulted in making the payment due April 1, 1947, and made no further payments under the contract. Thereupon, the plaintiff, claiming the right so to do, elected to terminate the contract. He gave the written notice of default called for by terms of the contract, as he contends, and retook possession of the property. He has continued to occupy the premises since.

While Krasnow and wife were in possession of the premises and prior to default, they contracted for the construction of certain improvements thereon, the supplies and materials for which were furnished by Grants Building and Supply Company. Default being made in payment therefor, one Hardy Conley d/b/a Grants Building and Supply Company, on February 5, 1947, filed a claim of lien with the County Clerk of Valencia County, New Mexico. The amount for which the lien was claimed was $2,885.61. The Krasnows were still in possession of the premises when the claim of lien was filed. The building was to be a card room, 21' x 20'. However, this was not the first improvement placed on the premises by the Kras-

nows. They previously had initiated and carried to completion other construction on the lots in question. But it will, perhaps, conduce to an intelligent understanding of events in the order of their sequence to quote the findings of the trial court. They follow:

"1. On June 19, 1946, plaintiff was the owner of the real estate described in paragraph 1 of the complaint.

"2. On that date, plaintiff entered into a contract with the defendants, Krasnow and wife, for the sale and purchase of said property, which contract was admitted in evidence in this cause. Said contract was recorded with the County Clerk of Valencia County, New Mexico, on June 27, 1946, in Book 61, page 614, records of said County.

"3. On or about July 1, 1946, defendants, Krasnow and wife, took possession of said property and continued in possession until on or about May 7, 1947.

"4. On or about September 1, 1946, defendant Krasnow entered into a contract with one Kruger for the construction of a dance hall on said property. Kruger immediately commenced construction of said building.

"5. On September 5, 1946, plaintiff learned of said construction work, and on September 6, 1946, plaintiff posted a notice of Non-responsibility on said property, copy of which notice was admitted in evidence in this cause as plaintiff's Exhibit 'D'.

"6. On or about November 10, 1946, Kruger completed the dance hall in accordance with the contract and it was accepted by defendant, Krasnow.

"7. On or about November 22, 1946, defendant Krasnow entered into an oral contract with Grants Building & Supply Co. for the construction on said premises of a game room building, immediately north of and adjacent to said dance hall building. By the terms of said contract, Supply Co. agreed to furnish all labor and materials for the construction of said game room building and Krasnow agreed to pay therefor the cost of all labor and material, plus a fee of 20%. The construction of said game room building was not planned nor contemplated at the time of the Kruger contract.

"8. On or about November 25, 1946, Supply Co. entered into the performance of its contract with Krasnow and completed said game room building on or about January 10, 1947.

"9. The notices of non-responsibility posted on September 6, 1946, did not remain posted at the time of the contract between Supply Co. and Krasnow.

"10. Plaintiff did not post any notice of non-responsibility subsequent to the no-

tice posted September 6, 1946, although plaintiff had knowledge of the construction of said game room building within a short time after its commencement.

"11. In the performance of its contract, Supply Co. expended $2930.17 for labor and materials to which should be added 20% thereof, or the sum of $586.03, making a total of $3516.20. Krasnow paid Supply Co. the sum of *$113.71*, leaving a balance of $2384.49, which has not been paid.

"12. On February 5, 1947, Supply Co. filed its claim of lien with the County Clerk of Valencia County, New Mexico and it was recorded in Book 67, page 174, Records of said County. Said claim of lien was admitted in evidence in this cause as defendants' Exhibit '1'.

"13. Defendant Krasnow made payments with interest called for by his contract with plaintiff up to April 1, 1947. The payment due April 1, 1947, was not made and on that date, plaintiff gave defendant Krasnow 'written notice of such default.

"14. On May 7, 1947, plaintiff filed with the County Clerk of Valencia County, New Mexico, an affidavit of mailing said notice, that payment had not been made as called for by said contract on April 1, 1947, nor since, and on said date filed with the County Clerk of Valencia County, New Mexico, a special warranty deed from Krasnow and wife to plaintiff, which said deed had been deposited in escrow with the contract in June, 1946, and in May, 1947, taken from the escrow agent by plaintiff.

"15. On April 10, 1947, defendant Charles Ilfeld Co. secured judgment in the District Court of Bernalillo County, New Mexico, against defendant Krasnow and wife for the sum of $315.81, transcript of which judgment was filed with the County Clerk of Valencia County, New Mexico, on April 19, 1947, and recorded in Book A-2, page 21, Records of said County.

"16. The attorneys for Supply Co. should be paid the sum of $350.00 for their services in this cause."

And from the foregoing findings the trial court concluded:

"1. As equities cannot be adjudicated in a quiet title action the complaint should be dismissed.

"2. The notice of non-responsibility posted by plaintiff, under 63-210, N.M.S. 1941A, applied only to construction work then in progress and did not apply to the contract between Krasnow and Supply Co. which called for a different structure under a subsequent and separate contract.

"3. 63-210, N.M.S. 1941A, should be strictly construed.

"4. The mechanics' lien law of this State should be liberally construed.

"5. The claim of lien filed by Supply Co. attaches not only to the interest in the property owned by Krasnow but also the interest of plaintiff therein.

"6. The effect of the forfeiture of the contract between plaintiff and Krasnow and wife, and the recording of the special warranty deed without foreclosure of said contract, was to merge the legal and equitable titles in the plaintiff, subject to intervening liens, particularly to the lien of Supply Co. and the lien of Charles Ilfeld Co.

"7. The Claim of lien Supply Co. should be foreclosed against the property described in the complaint as to the interest of plaintiff and all other defendants in and to said property.

"8. The lien of the judgment of Charles Ilfeld Co. should be foreclosed against the property described in the complaint as to the interest of plaintiff and all other defendants in and to said property except the interest of Supply Co., to which it is inferior.

"9. Supply Co. is entitled to interest on its claim from July 10, 1947, at the rate of six per cent per annum together with attorneys' fees and court costs.

"To all of which, the Plaintiff and all other Defendants except and object."

The court then entered its judgment (1) dismissing the plaintiff's complaint; (2) foreclosing the lien of Grant's Building & Supply Company on the fee interest in the premises described in the complaint to secure the sum of $2,384.49 adjudged due under it, plus interest and attorneys' fees; and likewise foreclosing the judgment lien of Charles Ilfeld Company on the same property securing the sum of $315.81, subject to the lien mentioned. The lots described in the complaint were ordered sold to satisfy the amounts adjudged due the respective cross-complainants. This appeal followed, as already stated.

The plaintiffs first complain of the trial court's action in dismissing their complaint upon the ground stated in conclusion of law No. 1 that " * * * as equities cannot be adjudicated in a quiet title action the complaint should be dismissed." This claim of error must be sustained. Counsel for the defendant, Grants Building & Supply Company cite and rely upon the case of Otero v. Toti, 33 N.M. 613, 273 P. 917. It is not in point. Of course, the statutory suit to quiet title is not to be employed, as attempted in the cited case, Cf. Ross v. Daniel, 53 N.M. 70, 201 P.2d 993, to establish a trust in lands. The present suit represents no such effort. The plaintiff herein seeks, within the letter and spirit of 1941 Comp., § 25-1301, to quiet the title to lands to which he holds the record legal title and is in possession as against liens claimed by others which cloud

46

that title. The dismissal of his complaint was not justified and constitutes reversible error. To say the least, he should not have had his decree against the Krasnows and other defaulted defendants set aside, a result necessarily consequent on the dismissal of his complaint.

We next consider whether the posting of notices of nonliability by the plaintiff, as related by him and his witnesses and tested by the record before us, was sufficient as a matter of law to render his premises immune from the mechanics' lien sought to be enforced against them. There can be no question but that the language of the notices was adequate to do so. Nor can it be fairly said they were not posted in prominent places on the premises well calculated to attract notice and excite examination, namely, (1) on the liquor store; (2) on the hotel building; and (3) on a high board fence that had been constructed between the liquor store and the hotel building, thus shutting off from public view the construction work being carried on behind same, except as one might peer through cracks in the board fence and observe what was going on beyond.

Notwithstanding the fact, however, that notices sufficient as to form were duly posted in three prominent places on the premises, there is a dearth of evidence as to how long they remained posted. Nor does the trial court make any specific find-ing on the subject other than one that the notices did not remain posted until November 22, 1946, the time construction started under the oral contract between Grants Building & Supply Company and Krasnow, conditional vendee in possession, for construction of the card room.

Mention already has been made of the fact that Krasnow had initiated an earlier construction job on the premises about September 1, 1946, consisting of a dance hall, located behind the board fence between the hotel and liquor store. One Charles E. Means, a theater owner at Grants and a friend of Petrakis, notified him at Albuquerque by letter on September 5, following, of this construction pursuant to a request from Petrakis to forestall just this kind of claim. Petrakis went at once to his attorney in Albuquerque, had a form of notice prepared, and proceeded forthwith to Grants where three copies of same were posted at separate places on the premises, as aforesaid.

Where the real controversy between the parties arises is over the question whether this notice of nonliability, duly posted on September 5, 1946, as found by the trial court, suffices to relieve plaintiff's property from liability to a mechanics' lien for labor and material supplied under the separate contract for construction of the card room begun November 22, 1946, even if it be conceded the posting of such notice was

sufficient to protect the premises from liability for any lien accruing under the prior contract for building the dance hall, work on which was concluded on November 10, 1946. The question is to be resolved, of course, by determining whether Petrakis, the plaintiff, had knowledge, or notice of facts reasonably calculated to incite inquiry on his part, that the construction of the card room begun November 22, 1946, represented work under a new and independent contract, or was justified in believing the work to be merely a continuation of the construction against which he already had posted the statutory notice of nonliability. If the latter be the case, then the lien claim of Grants Building & Supply Company must fail and all other questions appertaining thereto become unimportant to a decision.

A careful reading of the record satisfies us there is not an iota of proof upon which to base a finding that the plaintiff knew or was charged with knowledge, that work on the game room represented anything but a continuation of building improvements already begun September 1, 1946, and against which he already had given notice of nonliability by posting on September 5, following. It is to be remembered that the plaintiff, after entering into the purchase contract with Krasnow, in order to forestall the making of a claim of the very kind now asserted took the

precaution, an act somewhat unusual in a layman, of asking a local friend to be on the lookout for any building operations and to notify him promptly if signs of any such appeared. Acting upon this request, the friend, Means, who appeared as a witness in plaintiff's behalf, wrote him of the presence of cement blocks on the premises, and of the digging of a ditch, as if for a foundation. The plaintiff promptly posted the premises.

It appears in the evidence that the initial work was done in the construction of a dance hall by a contractor by the name of Kruger and that most of the supplies and material for the job were purchased from Grants Building & Supply Company, present lien claimant. Work progressed under the contract from September 1, 1946, until November 10, 1946. Under the trial court's findings, a hiatus of less than two weeks intervened between the time work ceased under the old contract and construction began under the new. As counsel for plaintiff aptly suggest, periods of cessation as long as that here shown often intervene due to inclement winter weather, or inability to get prompt delivery of building materials, some of which were notoriously scarce at the time, so near the cessation of hostilities in World War II.

We find nothing in the record, above the plane of pure speculation or surmise, to suggest that plaintiff knew, or

is to be charged with knowledge, that work under a new contract and under different supervision had begun. As a matter of fact the plaintiff, himself, was spending very little of his time in Grants throughout this period, sojourning for considerable periods in California for his health and at Albuquerque. The witness, Means, who was acting as a sort of lookout for plaintiff in this matter, although still a resident of Grants and mindful that construction was going on throughout the period covered by both contracts, certainly indicated no knowledge whatever that the building of the dance hall and the card room represented different transactions, and more especially that they were taking place under independent contracts. If he had suspected such to be the case, the fact that Grants Building & Supply Company, the chief furnisher of materials under the first contract, continued right along the furnishing of materials under the second employing the same workmen and delivery trucks, would have had a strong tendency to allay any such suspicion. It is not shown that either Means or Petrakis even knew Kruger, the contractor, on the first job. For aught that appears, Grants Building & Supply Company might easily have appeared to them as the sole contractor for the entire building program. Under the record before us, there is nothing but conjecture and surmise to fix plaintiff with knowledge or notice that a new contract for different job was under way with the commencement of work on the card room. Cf. Scofield v. Lordsburg Municipal School District of Hidalgo County, 53 N.M. 249, 205 P.2d 834. A finding may not rest on mere speculation or conjecture. Citizens Finance Co. v. Cole, 47 N.M. 73, 134 P. 2d 550.

■ What we said in our opinion on motion for rehearing in Albuquerque Lumber Co. v. Tomei, 32 N.M. 5, 13, 250 P. 21, 24, on the probative force of facts relied on to constitute notice by the vendor of building operations undertaken by a vendee in possession under an executory contract of purchase seems pertinent to the situation now confronting us. There, as here, it was sought to charge the vendor with knowledge of the construction of a dance hall for which a lien was claimed by proof that he knew of certain other improvements taking place on the premises, work on which had been completed a little more than a month before construction started on the dance hall. True enough, the trial court in that case found the owner to be without knowledge of the second improvement. Here, contrarily, the finding is that vendor did know of the construction of the card room. The finding, however, as we have held, in so far as it implies he knew it was under a separate contract, is without evidence to support it. The opinion states:

"It is argued that it thus conclusively appears that appellees had knowledge in a general way that the premises had been, and were to be, improved. It is also urged that it is not required that knowledge be shown of each of the steps in the making of improvements, or of each separate contract for labor or materials contributing to them. This may be admitted, without concluding that knowledge of repairs and alterations upon a building on the premises when it was sold necessarily imputed knowledge of intent to erect a new building.

"Appellant cites only Raisch et al. v. Helfrich et al., 47 Cal.App. 494, 190 P. 848. This case does not seem to bear upon the question, nor have we found a case in point. On the question of knowledge, generally, see 40 C.J. 147. We think that the statute, in requiring disclaimer of liability, has reference to the particular contract or scheme of improvement in progress or contemplation at the time, and that, for instance, *knowledge that a vendee intended to erect, or was erecting, a garage on the premises, would not impute knowledge of intention to erect, or erection of, a dance hall on the same premises under a different contract.*" (Emphasis ours.)

What has been said leads us unerringly to the last and decisive inquiry on this phase of the case, namely, treating the two construction jobs as one, as we have just held the plaintiff fully justified in believing them to be, was the notice given sufficient to protect his property from the mechanics' lien sought to be fixed upon it? Whether so will depend upon a proper construction of the controlling statute and findings made or to be presumed in plaintiff's favor. The governing statute is 1941 Comp. § 63-210, reading as follows: "Every building or other improvement mentioned in the second section of this article (§ 63-202), constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article, unless such owner or person having or claiming an interest therein shall, within three (3) days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to the effect, in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

It having been shown, and not being seriously questioned as a matter of fact, that the statutory notice, sufficient as to form, was posted in three public places on

the premises involved, it becomes important to determine the effect of such posting. The statute declares notice given by such posting will free the estate of the vendor from lien claims incident to the construction being carried on. We have on several occasions so construed the statute. Albuquerque Lumber Co. v. Tomei, supra; Albuquerque Lumber Co. v. Montevista Co., 39 N.M. 6, 38 P.2d 77.

Notwithstanding the language of the statute and our holdings under it, however, the vendor under an executory contract to sell real estate is not to have his premises automatically absolved of liability by the mere physical act of posting if, contrary to the intent of the statute, the posting is not in good faith and is under conditions which vendor must have known would preclude the notice contemplated by the statute. In the state of Nevada where the same statute (apparently adopted from California as was ours) is found, the Supreme Court holds the notice must be so posted as that, under ordinary conditions, it will remain for a reasonable time. Hence, in Nichols v. Levy, 55 Nev. 310, 32 P.2d 120, where notice disclaiming responsibility for improvements was posted on front door and show window frame of a building which, the next day or at the most two days later was torn down in making the improvements contemplated, and the agent posting the notice knew or was charged with knowledge that notice would not remain posted a reasonable length of time, and did not repost, it was held the notice intended by the statute was not given and the vendor's estate was subjected to the lien claimed. See, also, Phillips v. Snowden Placer Co., 40 Nev. 66, 160 P. 786.

There is nothing in this case in any way resembling the factual situation present in the Nevada cases just cited. Here the copies of notice were posted in conspicuous places on two buildings on the premises and, in addition, on the board fence between the two buildings mentioned behind which the construction was under way. The improvements being made did not call for the demolition of the places of posting, as in the Nevada cases and the plaintiff was fully justified in believing they would, as they did, remain intact throughout the period of construction.

The record is silent on just how long the copies of notice actually remained posted. Neither the witness, Means, nor his son who was present with his father and Petrakis when the copies of notice were posted, would attempt to say, because neither knew, just how long the notice remained posted. The younger Means said he saw the copies still posted the next day, and as he thinks also a few days later. His father observed they were still posted the next day but did not know how

long they remained posted. Petrakis, the plaintiff, who left Grants soon after the posting and did not return until something like "fifteen, twenty, or thirty days later," agreed the copies of notice appeared to have been torn off when next he returned, but was informed by many people of Grants that they had observed and read the notice as they passed the premises during the period of his absence. The notices had been securely attached to the buildings on which posted, by tape on the hotel and liquor store, and by "tacking" on the board fence. True enough, witnesses for Grants Building and Supply Company, including Hardy Conley who filed the claim of lien in his own name, but on its behalf as he related, testified they had not observed posted copies of the notice. Conley admitted knowledge, however, that Krasnow had only an executory contract for purchase of the premises in question, with Petrakis still holding the legal title.

■ Under the foregoing facts we are constrained to hold that statutory notice was given by the plaintiff that he would not be responsible for the improvements then being made on the premises in question and that he was justified in believing the building of the card room to be a part of such improvements. Three separate copies of the notice were posted in distinct and conspicuous places on the premises. Viewed literally, the statute requires the posting of but a single copy of the notice if sufficient to give notice. They were posted in such manner and in such places as fully to justify the plaintiff in believing that, under ordinary conditions, they would remain posted for a reasonable time. Having been shown to be thus posted it will be presumed they remained posted a sufficient length of time to impart knowledge to the persons it is intended to affect. Marshall v. Cardinell, 46 Or. 410, 80 P. 652. A condition once shown to exist will be presumed to continue until the contrary is established by evidence direct or presumptive. Corcoran v. Albuquerque Traction Co., 15 N.M. 9, 103 P. 645; McLendon v. Dean, 45 N.M. 496, 117 P.2d 250; Citizens Finance Co. v. Cole, 47 N.M. 73, 134 P.2d 73.

■ The plaintiff having shown in evidence the due posting of not one only but of three copies of a statutory notice of nonliability, admittedly sufficient in form, in separate places on the premises conspicuous as vantage points, with a presumption obtaining in his favor that they remained posted until the contrary was shown, the burden then shifted to the lien claimant to develop proof by way of confession and avoidance to nullify effect of the notice thus attempted, Cf. Reno Plumbing & Heating Co. v. Levy, 55 Nev. 367, 35 P.2d 302, as for instance evidence they were not so posted as to justify a bona fide belief

on plaintiff's part that, under ordinary conditions, they would remain posted for a reasonable length of time. The only definite proof developed on this issue by the lien claimant, not of a wholly negative character, Levy case, supra, was the admission on cross-examination of plaintiff himself that when he returned to Grants some 15 to 30 days later, following the trip there to post the notices, they appeared to have been removed. This is the first evidence adduced even tending to overcome the presumption that the copies of notice remained posted up to that time.

█ The issue thus arose in the proof whether the posting of a copy of the notice at three conspicuous points on the premises which remained posted for a period variously estimated as from 15 to 30 days, constitutes the reasonable time for the notice to remain posted contemplated by the statute. The burden being on lien claimant to establish that the notice posted did not remain posted for a reasonable time, and the record being silent on the issue, a finding against it and in favor of plaintiff on the issue will be presumed. Byerts v. Schmidt, 25 N.M. 219, 180 P. 284; Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740; Ringle Development Co. v. Town of Tome Land Grant, 49 N.M. 192, 160 P.2d 441.

█ It is to be borne in mind that the owner of premises contracted for sale to a vendee in possession is not a guarantor that the notice given by posting in the statutory manner will always be brought home to potential lien claimants. In the first place, when the vendor goes on the premises to post such notice he enters premises in possession of another, his conditional vendee, who more likely than not, will view in a hostile manner his presence there on an errand which he may interpret as one intended to embarrass his credit or disrupt his plans. These considerations in some cases may lead the vendee to remove the notice as soon as posted. It would be to the interest of potential lien claimants, on the other hand, to remain in ignorance of the posting, the better to further secure their claims. Thus with two interested parties likely to prove unsympathetic with the owner's efforts to protect himself by posting, if not actually hostile thereto, his position is a difficult one at best.

█ The statute itself based on considerations of benefits deemed sufficient to overcome constitutional barriers, the absence of which may not be proven to defeat a claimed lien, raises by estoppel against the owner a conclusive presumption of consent to improvements of which he has knowledge, if he fails within the short time of three days after acquiring such knowledge to post on premises in another's possession the statutory notice of nonliability. Albuquerque Lumber Co. v. Mon-

tevista Co., supra. If under such conditions he happens to encounter a vendee who persists in removing notices as quickly as posted, the owner might stand just off the premises with a loud speaker and proclaim to the world throughout working hours that he would not be responsible, all to no avail. Verbal notice does not suffice. Albuquerque Lumber Co. v. Montevista Co., supra.

Hence, it is a just and fair rule which relieves the owner's property of liability to mechanics' liens if within three days of learning of improvements he gives notice by posting the statutory declaration of nonliability under such conditions as will fairly warrant the belief that it will remain posted a reasonable length of time. Of course, if short of that period and notwithstanding his previously entertained belief on the subject, he should learn the notice had been torn down or destroyed, good faith would call upon him to repost. Nevertheless, all that is required is a good faith effort to comply with the statute. The owner is not called upon to employ a sentry to stand watch throughout a period deemed reasonable to make certain the notice remains posted all the while.

The conclusions reached with reference to the claim of a mechanics' lien by Grants Building and Supply Company render unnecessary the decision of several other intriguing questions involving objections to the validity of the lien claimed by it. In other words, if the claimant has no lien against plaintiff's estate in the premises involved, by reason of the posting of notice of nonliability by plaintiff, whether it may claim benefit of a lien filed in the name of another, or whether the items making up the amount of its lien claim were properly proved at the trial, as well as other questions argued, all are rendered moot by our decision that plaintiff's notice by posting was effective against it.

This leaves for decision the question of liability of plaintiff's property to a judgment lien in favor of Charles Ilfeld Company recovered against Samuel Krasnow, plaintiff's conditional vendee, and Ida Krasnow, his wife, in the sum of $282.66 on April 10, 1947, a transcript of which was filed for record in Valencia County against the judgment debtors on the same day. Counsel for plaintiff first claim the lien is ineffective against his real estate because at most, Krasnow had only an equitable interest in the property which could not be reached under a statute such as ours, 1941 Comp. § 19-906, making money judgments a lien on *real estate* of the judgment debtor, subject to the conditions named in the statute. This presents a nice question for decision but we need not consider it in view of our conclusion on the next question to be considered.

It is strenuously urged upon us by plaintiff's counsel that Krasnow had no interests in the premises involved, either legal or equitable, which could be reached by Charles Ilfeld Company, as judgment lien creditor, by reason of the forfeiture of all its interest, upon default in making the payments called for by the contract and plaintiff's election to rescind and reclaim the property. The contract called for an installment payment in the sum of $5,000 to be made on April 1, 1947. It was default in the making of this installment that brought about the plaintiff's election to rescind the contract and reclaim the property. The paragraph of the purchase contract giving plaintiff the right to rescind and terminate the contract, should default in making the installment payments provided for occur, reads as follows: "Should the parties of the second part fail to make any of said payments at the respective times herein specified, or fail or refuse to pay said taxes, assessments or other charges against said real estate and continue in default for thirty (30) days after written demand for such payments, or payment of taxes or payment of assessments or other charges against said real estate, has been mailed to second parties to their address at Grants, New Mexico, then the party of the first part may, at his option, either declare the whole amount remaining unpaid to be then due and proceed to enforce the payment of the same; or he may terminate this contract and retain all sums theretofore paid hereunder as rental to that date for the use of said premises, and all rights of the second parties in the premises herein described shall thereupon cease and terminate and they shall thereafter be deemed tenants holding over after the expiration of their term without permission. An affidavit made by said first party or his agent, showing such default and forfeiture and recorded in the County Clerk's office, shall be conclusive proof, in favor of any subsequent bona fide purchaser or encumbrancer for value, of such default and forfeiture; and the second parties hereby irrevocably authorize the party of the first part to thus declare and record such default and forfeiture, and agree to be bound by such declarations as their act and deed."

It is because the written demand for payment of the installment due April 1, 1947, bore date April 1, 1947, and was mailed in Albuquerque the same day, although admittedly the registered letter containing the writing was not received by Krasnow at Grants until April 2nd, the day following, that counsel for judgment creditor claim the contract was wrongfully terminated and, hence, the rights of the conditional vendee continued to subsist, giving to the special warranty deed delivered to plaintiff following the filing of affidavit of default, the effect of bringing about a merger in plaintiff of his legal and Krasnow's equitable titles, subjecting both to

the judgment lien. The argument is intriguing but, even though otherwise sound, a question we do not determine, it is not entitled to prevail if a forfeiture of Krasnows' interest under the contract was actually accomplished, as we believe to be the case.

Although the question whether a mechanics' lien on a conditional vendee's interest in land under an executory contract of sale will survive a forfeiture was left undetermined in Albuquerque Lumber Co. v. Tomei, supra, and in Albuquerque Lumber Co. v. Montevista Co., supra, there is a strong implication in the Tomei case that it will not do so. This would be in accord with the better reasoned cases and with what we believe to be the weight of authority. If a mechanics' lien does not survive a forfeiture of the interest of a conditional vendee under an executory contract of sale, so much the more does the lien of a money judgment fail to do so. In 57 C.J.S., Mechanics' Liens, § 245(c), page 820, the author states: "It has generally been held that, where a purchaser of land under a contract of sale, to whose interest a mechanic's lien has attached, loses his interest in the land by failure to comply with and complete the contract, no lien can be enforced against the land, although there is some authority to the contrary."

The effort to defeat the forfeiture claimed because the written demand for payment of the April 1, 1947 installment is itself dated the same day as maturity of the installment is designated by plaintiff's counsel as a "somewhat spurious argument," as stated in their brief, "in view of the fact that more than two years have elapsed since the purchaser, Krasnow, defaulted on the contract and since the notice was sent, and there has been no offer on the part of Krasnow to complete his contract nor has there been any claim asserted by him as to the premises."

Rather pungent argument, to say the least, but we need not pass upon its merit in view of our conclusion on the effect of mailing the written demand for payment on the maturity date of the installment for which payment was demanded. In our opinion, it could only be fairly given effect as a demand made upon the first day of default. So construed it would start running of the 30-day period of default, within which payment could be made, with the very first day of default. Payment at maturity, of course, would nullify the notice, just as payment within 30 days after maturity, in view of the written demand, would nullify default in payment on that date. Such a construction in a controversy between vendor and vendee would relieve against any harshness in the claim of forfeiture and extend to the vendee every right that would have accrued to him, had the demand been mailed on the day received

by him. We fail to see how or why a judgment creditor can or should be entitled to claim any greater rights than the vendee himself might have asserted, if offering to cure a default claimed.

It follows from what has been said that the judgment should be reversed and the cause remanded with a direction to the trial court to set aside its judgment and for further proceedings thereafter, in conformity with the views herein expressed. The plaintiff will recover his costs in this court.

It is so ordered.

BRICE, C. J., and McGHEE and COMPTON, JJ., concur.

LUJAN, J., did not participate.