248 P.2d 1065

**SLONE–CARTER GRAIN CO. v.**

**JONES et al.**

**No. 5523.**

Supreme Court of New Mexico.

Oct. 10, 1952.

Mears & Mears, Portales, for appellees.

SADLER, Justice.

The appellant, defendant below, appeals from a judgment against him in the sum of $2,303.20 in favor of the plaintiff, appellee in this court, awarded by the district court of Roosevelt County following a trial before the court without a jury. The complaint alleged breach of an oral contract to sell and deliver to plaintiff all sweet sudan seed raised on described land for the cropping season of 1950 at an agreed price of $4 per hundred weight. The parties will be referred to as they appeared below.

In the year 1950 the defendant, C. S. Jones, was the owner of the SW¼ of Section 33, Township 5 South, Range 37 East, N.M.P.M. In the early part of that year he entered into an oral agreement with his son, Marvin Jones, then a minor, under which the latter was to farm the land above mentioned for the year 1950. Under the arrangement made C. S. Jones was to select the area to be planted to each crop to be grown as determined by him. The son, Marvin, was to arrange for the seed to be planted but the father was to pay for it. C. S. Jones, the father, would decide the time for harvesting and selling the crops, the price at which to be sold and the person to whom to sell. The son was authorized to contract the sale of the crops, make delivery of them, receive the purchase price therefor and pay same over to his father.

Morgan & Morgan, Portales, Smith & Smith, Clovis, for appellants.

The oral agreement further provided that C. S. Jones should pay the living expenses of Marvin Jones and family for the year 1950 and in addition he was to receive a portion of the proceeds from the crops for his work on the farm which at all times was to be worked under the supervision and control of the father, C. S. Jones.

The plaintiff is a copartnership composed of Jay Slone and Cyril Carter and was engaged at all times material to this action in the grain business at Portales, New Mexico. On June 8, 1950, the plaintiff entered into a written contract with the defendant, Marvin Jones, whereby plaintiff agreed to furnish him all the seed necessary to plant the above described land in a crop of sweet sudan and when harvested to purchase same from him, the defendant, Marvin, promising to sell all the sweet sudan seed so raised on the land in 1950 at the agreed price of $4 per hundred weight. The plaintiff at the time of entering into such contract knew Marvin Jones was in possession of the land described and was farming it in 1950. Actually, as already indicated, the land was owned by his father, C. S. Jones.

The sweet sudan seed crop so planted and raised for the cropping year of 1950 belonged to C. S. Jones and the contract made between plaintiff and Marvin Jones was made for the use and benefit of C. S. Jones. It was not until about September 10, 1950, that C. S. Jones first learned of the contract between his son, Marvin, and the plaintiff. He did not repudiate the contract, however, until a day or two prior to commencement of this action by which time he could have learned that the market price of sweet sudan seed was in excess of what plaintiff was to pay as set forth in the written contract between plaintiff and Marvin Jones.

When the father learned of the contract made by his son with the plaintiff he would not permit his son to deliver the sudan seed to plaintiff and did not offer to pay plaintiff for the seed furnished until after commencement of this suit. A total of 57,580 pounds of sweet sudan seed was raised and harvested by the son. Plaintiff was at all times ready, and willing and able to pay the agreed price it contracted to pay and the defendants were so notified. The market price of sweet sudan was $8 per hundred weight on November 1, 1950.

The trial court having made the foregoing findings of fact concluded therefrom that the oral agreement between C. S. Jones and Marvin Jones created a relationship between them whereby the latter was authorized to farm the lands in question as agent for the former; that in contracting the sale of the sudan seed crop Marvin Jones acted as agent for an undisclosed principal, namely, C. S. Jones, for whose benefit the contract was made and who was

liable thereon. The court further concluded that plaintiff was entitled to recover from defendant, C. S. Jones, $2,303.20, the difference between the contract price and the market price at the time of the breach of the contract, with statutory interest and costs.

It was on the foregoing findings and conclusions that the trial court entered judgment against the defendant C. S. Jones in the sum already stated. Before entering into a discussion of the merits of the appeal it should be added that the defendant Marvin Jones, although a minor at time of entering into this contract, had married in the fall of 1949 which explains the recitation in the court's findings that as a part of the agreement between father and son C. S. Jones was to pay the living expenses of his son, Marvin Jones, and *family*. Furthermore in the separate answer filed by Marvin Jones through a guardian ad litem, among other defenses, he pleaded his minority and disaffirmed the contract, praying a dismissal upon that ground. In the final judgment entered the court dismissed him out of the case, leaving the single defendant, C. S. Jones, his father, as the appellant in this court.

The defendant argues the case under as many as four separate points and much time is spent in presenting the contention that the case was not tried on the theory of agency and, hence, agency should not be considered as support for the judgment, citing Pecos Valley Trading Co. v. Atchison T. & S. F. Ry. Co., 24 N.M. 480, 174 P. 736; and in seeking to determine whether the contract between the father and son was one of landlord and tenant as in Washburn-Wilson Seed Co. v. Alexie, 54 Idaho 727, 35 P.2d 990, or whether the son was a mere share cropper as discussed in Powers v. Wheless, 193 S.C. 364, 9 S.E.2d 129. The latter points are merely incidental to the question whether the son was in fact an agent of his father and, if an agent, whether this discloses a case for holding the father liable as an undisclosed principal. But these and every other question argued, each and all, are resolved by deciding the single issue, namely, assuming agency of some sort on the part of the son, was he authorized to contract the sale of the sweet sudan seed crop which he was about to plant, cultivate and harvest, under the arrangement disclosed between him and his father.

For purposes of our decision only we may assume that if all of the facts found by the court were true, the judgment against the father would have to stand affirmed. Nevertheless, a careful study of the evidence is convincing that a vital recitation in the findings is without the needed support in the evidence as a result whereof the judgment appealed from must be reversed. The portion of the findings referred to reads:

"* * * that Marvin Jones was to make the contracts for the sale of such crops, was to make delivery of the crops to the purchaser or purchasers thereof, was to receive the price therefor and pay all of such price over to C. S. Jones; * * *".

There can be no doubt that if the portion of the findings just quoted be true the plaintiff would be entitled to subject defendant to liability. It thus becomes important to determine whether the evidence affords adequate support for that much of the findings adopted by the trial court. As already announced, we find nothing in the transcript of evidence to support this finding. The only testimony in the record touching the matter is that when the crop had been harvested and the father, C. S. Jones, was being pressed to pay indebtedness amounting to several thousand dollars overdue on farm equipment, including a tractor, purchased for the son's use in planting, cultivating and harvesting the crop, and there was no place to store the crop, the father authorized the son to sell part of the crop to a buyer at Amherst, Texas, of whom the son had told him. In the father's own words:

"I says, Marvin, I am going to let you sell part of that sudan so's I can pay that tractor note off."

And, further testified:

"Q. Did you at any time give Marvin authority to sell any part of the sudan seed? A. Yes sir, I told him when some of these debts come due and we had no place to house it up there, I told Marvin that, told me about a fellow from Amherst over there wanting to buy it and I says, Marvin, I am going to let you sell part of that sudan so's I can pay that tractor note off.

"Q. Did you ever authorize him to enter into this contract with Slone-Carter Grain Company? A. I sure did not.

"Mr. Smith: I believe that is all. Take the witness."

Cross-Examination

By Mr. Mears:

"Q. Did he just sell it at Amherst Mr. Jones? A. He sold some of it at Amherst and we sent some to Muleshoe.

"Q. You had the supervision of where it was to go and so forth and who was to buy it? A. I told him to go over there and see what them fellows would pay. There was a fellow over there that had been over there trying to buy it and wanted it and I told him to go over there and see what it would bring and come back by and tell me what he'd give for it and he did.

"Q. And then after he found out what he'd give you told him to go ahead and sell it? A. Yes sir, I told him to sell it, that I had to have some money."

This express authority given in the face of an emergency falls far short of support for a finding that earlier the father authorized the son to contract a sale of the crop before it was even planted, much less harvested. We are familiar with the doctrine that a fact or condition once shown to exist may be the subject of a rebuttable presumption that it continues to a subsequent time. McClendon v. Dean, 45 N. M. 496, 117 P.2d 250. But no cases holding that this principle operates in reverse have been called to our attention.

Nor is there anything by way of ostensible authority on which to base such a finding. Admittedly, the plaintiff contracted with Marvin Jones as if an adult owner of the farm he occupied. Plaintiff did not know the son's father owned the farm and had absolutely no knowledge of him in the transaction at the time of contracting with him as demonstrated by the fact that when the complaint was filed he could do no more than allege upon information and belief that the father claimed *some* interest in the crop. This information, as the evidence discloses, the plaintiff had just acquired from another son when the crop was being harvested.

Counsel for the plaintiff suggest that the doctrine of ratification supports the judgment. It is enough to say that the trial court does not base its judgment on the doctrine, neither was such a theory pleaded by plaintiff. Absence of authority in the son to make the contract on which plaintiff sues is decisive of the case and renders fatally defective the judgment rendered against defendant, C. S. Jones. The cases of Koch v. Murphy, 151 Kan. 988, 101 P.2d 878; Powers v. Wheless, supra, and Huth v. Curry, Tex.Civ.App., 13 S.W.2d 733, are persuasive of the correctness of the conclusion we reach if, indeed, authority were needed for a conclusion based merely on the facts.

Notwithstanding the conclusion announced, however, the plaintiff is entitled to judgment for the price of the sudan seed purchased and received from the plaintiff. Indeed, on two different occasions during the trial the defendant made a tender and offered to pay into court the amount at which the seed were charged out to the son. The first tender was for $78 and a few minutes later, upon discovering that the tender was $3.25 less than the amount charged for the seed, the tender was renewed for the correct amount, $81.25. Since under the arrangement between the father and son, the former was to pay for the seed and actually endeavored twice at the trial to do so, which offers were rejected because inconsistent with the theory under which plaintiff sought recovery, the trial court, as a condition to vacating the judgment and dismissing the plaintiff's cause of action, should order defendant to

pay into court for plaintiff's benefit the sum of $81.25, the agreed price of the sudan seed delivered to the son.

It follows from what has been said that the judgment must be reversed and the cause remanded to the district court with a direction to it to set aside its judgment and dismiss the plaintiff's cause of action upon defendant paying into court for plaintiff's benefit the sum of $81.25. The defendant will have his costs to be taxed by the clerk.

It is so ordered.

McGHEE and COORS, JJ., concur.

LUJAN, C. J., and COMPTON, J., not participating.