387 P.2d 458

Cecil Ray MONDEN, Plaintiff-Appellant,

The Home Indemnity Company, Plaintiff-in-Intervention, Appellant,

v.

H. C. ELMS and the Halliburton Company, Defendants-Appellees.

No. 7306.

Supreme Court of New Mexico.

Dec. 9, 1963.

 

William J. Heck, Hobbs, for appellant Cecil Ray Monden.

Keleher & McLeod, Russell Moore, Michael L. Keleher, Albuquerque, for appellant The Home Indemnity Co.

Neal & Neal, Hobbs, for appellees.

COMPTON, Chief Justice.

This is a personal injury action resulting from a motor vehicle collision at the intersection of a county road with State Highway 128 a short distance east of Jal, New Mexico.

The cause was tried to a jury and at the close of the plaintiff's case the defendants moved for a directed verdict on the ground that the plaintiff had failed to establish a prima facie case of negligence against the defendants. The court reserved its ruling on the motion until the defendants had put on their case. One witness was called by the defendants, a Mr. Reagan, shop foreman for Halliburton Company, after which they rested and renewed their motion, which was sustained. Judgment was entered accordingly and the plaintiff has appealed.

We are not unmindful of the rule that on appeal from a judgment based on a directed verdict for the defendant, the evidence, with all reasonable inferences flowing therefrom, must be viewed in the light most favorable to the plaintiff; and,

where reasonable minds may differ as to the inferences and the conclusion to be drawn therefrom, it becomes a question of fact to be determined by the jury. Ferguson v. Hale, 66 N.M. 190, 344 P.2d 703; Stranczek v. Burch, 67 N.M. 237, 354 P.2d 531; Bell v. Ware, 69 N.M. 308, 366 P.2d 706; Martinez v. Scott, 70 N.M. 354, 374 P.2d 117; Bolt v. Davis, 70 N.M. 449, 374 P.2d 648.

■ State Highway 128 runs east and west and has paving 24 feet wide divided by a broken white line. The unpaved county road runs north and south and is 28 feet wide, the intersection being 24 feet north and south and 28 feet east and west. The collision occurred in the northwest quadrant and the point of impact was 4 feet and 6 inches north of the center line. The intersection is on a ridge or hill extending north and south. To the east a distance of 1300 feet there is a similar ridge or hill and, about halfway between, the terrain gradually dips some 7 or 8 feet.

The appellant was an employee of Worth Well Surveys, Inc., in the capacity of a logging engineer. He had a general knowledge of the area as he had driven over Highway 128 on two occasions just previous to the accident. His vehicle was equipped with a two-way radio and on August 26, 1961, he was called by his employer by radio to report for work at an Atlantic Refining Company well. To reach the well site, he was directed to turn south at the intersection onto the county road, go south a distance of 2 miles and then turn east on a "lease" road which would lead him to the well site. In traveling south it was necessary for appellant to pass over two cattleguards, the first of which was on the fence line 31 feet south of the south edge of the paved highway and which was some 12 inches higher than the highway. The other cattleguard was farther south, and both were painted with aluminum paint. To the north of the intersection, the county road was paved and there was a stop sign erected to warn drivers approaching the intersection from the north but there was no stop sign on the south side of the intersection to warn north bound drivers. Appellant had not observed that the county road extended north of the highway.

On August 27, 1961, about 7:00 p. m., appellant, having completed his work for the day, and a Mr. Keeling, sales manager for Worth Well Surveys, Inc., left the Atlantic well site for their respective homes but traveling in separate vehicles. They had agreed, however, to stop on the way at a restaurant in Jal for coffee. Keeling left the well site first and was followed by appellant driving a 1961 Chevrolet. At the intersection of the "lease" road and the county road, appellant stopped and engaged in a conversation with a Mr. Langton for a short while. While there he again talked with Keeling by radio. He then started

north traveling at a speed of 30 to 35 miles miles per hour, intending to turn left at the intersection.

Defendant Elms, driving a Halliburton truck 27 feet long and 8 feet wide with 10 wheels and weighing 40,000 to 50,000 pounds, was then approaching from the east on Highway 128 at a speed of 45 miles per hour, 5 miles under the maximum speed limit. The truck was equipped with various lights, all of which were burning. Its headlights were 3½ feet above the ground. The cab had 5 clearance lights visible from the front. Its identification lights were 9 feet 5 inches above ground level and which could be seen from a 45 degree angle.

Appellant saw the first cattleguard when he was some 50 feet south of it and then slowed down to 30 miles per hour. Due to the elevation of the cattleguard, he could not see the highway until he had reached the cattleguard. It was when the front of his vehicle passed over the cattleguard that his headlights brought the highway into view. Skid marks laid down from his vehicle began 12 feet north of the north edge of the cattleguard and continued to the point of impact, a distance of 34 feet and 5 inches. The collision partially disabled the truck's braking system and it came to rest 142 feet west of the point of impact, headed west with the right wheels near the north edge of the paving. Appellant's vehicle spun to the left and came to rest south of the highway, also headed west. The truck was hit on the left side, 6 feet and 7 inches from the front bumper.

Appellant testified that he was on or near the cattleguard when he first saw the Halliburton truck at an estimated distance of 100 to 150 feet to the east of the intersection; that he then applied his brakes and turned to the left. He also testified on one occasion that his speed was such that he could not have made a left turn onto the highway. Later he stated that he thought he could, or that he could have driven across the highway had it not been for the truck. He stated further that he intended to turn to the left but it all happened "in a flash" and he was not certain that he turned to the left. Appellant's expert testified that a driver approaching the highway from the south at night should be able to see the clearance lights on top of the cab of the truck a distance of 340 feet before reaching the intersection.

Elms, called as a witness by the appellant, testified that as he came up out of the dip, and when he was about 50 feet east of the intersection, he first saw appellant's headlights and that as the Chevrolet approached the cattleguard it seemed to jump; that at that time he realized appellant was not going to stop, applied his brakes fully and pulled his vehicle to the right. However, the truck left no visible skid marks on the pavement. Appellant produced other evidence that the cattleguard was visible to

drivers approaching from the south for a distance of 400 feet at night, and there is also evidence that appellant could have seen the truck's headlights when he was 70 feet south of the cattleguard, and the truck's clearance lights still farther, had they been working.

Previously we mentioned that the witness Reagan had been called as a witness by appellees. It suffices to say that his testimony has not been considered in reaching our conclusion.

It is our conclusion that appellant's evidence, with all reasonable inferences flowing therefrom, fails to show negligence on the part of Elms in the operation of the truck. On this issue the evidence is such that reasonable minds could not differ. It follows that a directed verdict was proper. It is obvious that the vehicles entered the intersection at approximately the same time. In this situation the statute strongly supports our conclusion. Section 64–18–27(b), 1953 Comp., provides:

> "When two [2] vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

■ There is evidence that when Elms was on the hill 1300 feet east of the intersection, he saw appellant's headlights and could have seen them at all times until appellant reached the intersection. The argument is made that this fact would warrant a finding by the jury that Elms was negligent in failing to keep a proper lookout for road hazards, and in failing to have his vehicle under control as he reached the intersection so as to avoid the collision. We fail to see where this evidence, with nothing more, has any probative value. There was nothing abnormal in the manner the Chevrolet was being driven until it had reached the cattleguard. Up to that moment Elms had a right to assume that appellant would exercise due care in approaching the intersection. Compare Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921; Langenegger v. McNally, 50 N.M. 96, 171 P.2d 316; Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407.

■ Appellant sought to invoke the last clear chance doctrine, thus conceding contributory negligence on his part. The facts do not warrant its application. There is no evidence to indicate that Elms, after becoming aware of the appellant's perilous condition, or that he was oblivious to danger, had an opportunity by the exercise of ordinary care to avoid the accident. According to the testimony of the appellant, the collision occurred "in a flash" after he saw the truck's headlights. Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028; Stranczek v. Burch, supra; Bryan v. Phillips, 70 N.M. 1, 369 P.2d 37.

The appellant, Home Indemnity Company, Inc., compensation insurance carrier for Worth Well Surveys, Inc., intervened, seeking reimbursement, but, in view of the disposition made of the case, its claim requires no discussion.

The judgment must be affirmed, and it is so ordered.

CHAVEZ and MOISE, JJ., concur.