472 P.2d 658

**Rufina P. LOPEZ, Administratrix of the Estate of Frank C. Lopez, deceased, Plaintiff-Appellant,**

**v.**

**Eduardo MAES and Mabel Gallegos, Defendants-Appellees.**

**No. 392.**

Court of Appeals of New Mexico.

June 19, 1970.

Certiorari Denied July 20, 1970.

Avelino v. Gutierrez, Albuquerque, for appellant.

Mary C. Walters, Toulouse, Moore & Walters, Albuquerque, for appellee Eduardo Maes.

Robert W. McCoy, Hal Simmons, Albuquerque, for appellee Mabel Gallegos.

## OPINION

OMAN, Judge.

This is a suit by plaintiff for the alleged wrongful death of decedent, Frank C. Lopez. Our Wrongful Death Act appears as §§ 22–20–1 and 3, N.M.S.A.1953, and §§ 22–20–2 and 4, N.M.S.A.1953 (Supp.

1969). Plaintiff appeals from a judgment in favor of defendants entered pursuant to a jury verdict. We affirm.

Briefly, the facts surrounding the events which led to the filing of the complaint are:

(1) Some time after midnight on October 15, 1966, decedent apparently started across U. S. Highway 85 from east to west in front of the Double Q Bar in Los Lunas, New Mexico.

(2) Defendant Maes was driving north on the highway at a speed of about 40 miles per hour with his headlights on high beam. He observed a shadow-like object dart in front of his car from the east at just about the moment he struck decedent.

(3) Maes brought his vehicle to rest off the highway and immediately started to get out and return to the body of decedent, which had been thrown into the south bound traffic lane. At this time he saw the lights of a vehicle coming south on the highway. He ran back to the body of decedent, observed it briefly, and then tried to attract the attention of the driver of the approaching vehicle by waving his arms. When he saw the vehicle was not going to stop he jumped to the side of the road.

(4) The approaching vehicle was being driven by defendant Gallegos. A passenger in her vehicle exclaimed there was something on the road. About this time Gallegos saw Maes waving his arms, and then she felt a bump caused by her vehicle passing over the body. She did not see the body prior to running over it.

(5) Another vehicle also ran over the body. There is some confusion as to whether this was just before or after Gallegos had run over it, but apparently it was afterwards.

(6) There is no evidence as to whether decedent was alive or dead at the time Gallegos ran over his body, except that Maes observed no sign of life during the brief period between his arrival at the body and the time Gallegos ran over it.

Plaintiff first contends the trial court erred in refusing to give her requested instruction on last clear chance. There is no dispute as to the requisite elements, or factual matters, which must have existed before the issue of last clear chance was presented. They are: (1) Decedent must have been negligent. (2) As a result of his negligence he must have been in a position of peril from which he could not have escaped by the exercise of ordinary care. (3) The defendants knew or should have known of decedent's peril. (4) The defendants must then have had a clear chance, by the exercise of ordinary care, to avoid the injury, and they must have failed to do so. Burnham v. Yellow Checker Cab, Inc., 74 N.M. 125, 391 P.2d 413 (1964); Floeck v. Hoover, 52 N.M. 193, 195 P.2d 86 (1948).

Plaintiff urges that because Maes was driving at 40 miles per hour with his lights on high beam and there was also some light from other sources, and particularly from the Double Q Bar across the highway, the jury could properly have disbelieved his undisuted testimony that decedent darted from the east like a shadow directly in front of the Maes vehicle, and could have found Maes either saw decedent, or by the exercise of ordinary care should have seen him, and thereafter, by the exercise of ordinary care, Maes had a clear chance to avoid the injury to decedent.

In our opinion, the matters relied upon by plaintiff are not sufficiently substantial, or the inferences deducible therefrom sufficiently reasonable, to have warranted the giving of an instruction on the doctrine of last clear chance, insofar as Maes is concerned. The jury would not have been justified under New Mexico law in disregarding his undisputed testimony as to the sudden appearance and rapid movement of decedent directly into the path of his vehicle. Maes was not impeached by direct evidence of his lack of veracity, by evidence of his bad moral character, or by any other legal method

of impeachment; his testimony was not equivocal and contained no inherent improbabilities; there were no suspicious circumstances surrounding the accident, or his testimony in relation thereto; and no legitimate inferences could be drawn from the facts and circumstances of the case which would contradict or cast reasonable doubt upon the truth or accuracy of his testimony as to the unexpected and sudden, shadow-like appearance of decedent directly in front of the vehicle. In the absence of one or more of these circumstances, it has been repeatedly held the trier of the facts may not disregard the undisputed relevant testimony of a witness on a material issue. Aragon v. Boyd, 80 N.M. 14, 450 P.2d 614 (1969); Galvan v. Miller, 79 N.M. 540, 445 P.2d 961 (1968); Bank of New Mexico v. Rice, 78 N.M. 170, 429 P.2d 368 (1967); Frederick v. Younger Van Lines, 74 N.M. 320, 393 P.2d 438 (1964); Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940).

It is apparent the evidence would not have supported a finding that Maes had a clear chance, by the exercise of ordinary care, to avoid striking decedent. Therefore, the refusal of the instruction as to him was not only proper but necessary. Compare Monden v. Elms, 73 N.M. 256, 387 P.2d 458 (1963); Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028 (1960); McCoy v. Gossett, 79 N.M. 317, 442 P.2d 807 (Ct.App.1968).

The factual situation in Burnham v. Yellow Checker Cab, Inc., supra, upon which plaintiff particularly relies, is so unlike the factual situation in the present case, that the reasoning underlying the holding in the Burnham case, as to the sufficiency of the evidence to raise the issue of last clear chance, is not applicable here.

Plaintiff also claims that the issue of last clear chance was raised by the failure of Maes to remove decedent's body from the highway before it was struck by Gallegos. She has cited no authority in support of this claim. We are of the

opinion plaintiff must fail in this contention for at least two reasons:

■ (1) At the most, Maes was by the body for a period of ten seconds, and the Gallegos vehicle was approaching rapidly. During this time Maes looked at the body, observed no evidence of life, and then began his efforts to warn the driver of the danger. Even if it could be said that Maes had a duty to remove the body from the highway, which we need not decide, certainly it cannot be said that under the stress of the circumstances, and in view of the very brief time he had in which to determine what course to pursue, he had a clear chance, by the exercise of ordinary care, to remove the body from the highway and the immediate peril which was threatening his safety as well as the safety of decedent's body.

■ (2) There is absolutely no evidence in the record to support a finding that decedent was killed by the Gallegos vehicle, or that it in any way contributed to the death. The death is the injury with which we are here concerned, and, in the absence of any evidence to show this injury resulted from the body being run over by the Gallegos vehicle, Maes' failure to remove the body from the highway cannot possibly be said to have proximately caused this injury.

As to defendant Gallegos, we also hold the requested instruction was correctly denied. There is doubt as to whether the evidence relative to her running over decedent's body was sufficient to warrant the submission to the jury of the issue of last clear chance, even if this had been the injury with which we were concerned. However, we need not and do not base our decision on this doubt, but assume the evidence was sufficient to have raised the issue before the jury had there been evidence from which the jury could have found the injury was caused, or at least contributed to, by the act of Gallegos.

■ As above stated, this is a suit for wrongful death. Our Wrongful Death Act expressly provides that the basis of liability thereunder is the death of a person " * * * caused by the wrongful act, neglect or default of another, * * *" Section 22–20–1, supra. Insofar as Gallegos is concerned, plaintiff alleged in her first amended complaint that Gallegos was driving her motor vehicle " * * * in a southerly direction in such a negligent and careless manner as to * * * strike plaintiff's decedent violently and to cause his death. * * *" and " [t]hat as a proximate result of [her] negligence and carelessness * * *, plaintiff's decedent was killed * * *" These allegations were denied by Gallegos. Thus, the burden was on plaintiff to not only show Gallegos was negligent, but that her negligence was the proximate cause, or at least a concurring proximate cause of the death. This she failed to do.

As above stated, there is absolutely no evidence in the record to show that decedent was alive at the time his body was run over by the Gallegos vehicle, and no evidence to show this act by Gallegos in any way contributed to the death. Gallegos has raised, by way of a separately stated point in her answer brief, this question of the failure of plaintiff to prove Gallegos' act in running over the body was a proximate cause of the death.

■ Plaintiff contends in her reply brief that Gallegos could properly raise this question only by way of cross-appeal, which she failed to take. We disagree. If proximate cause is not the only reason or justification for, or the primary principle involved in, the doctrine of last clear chance, it is at least an important one; and, in any event, the doctrine's applicability clearly requires that defendant's negligence be a cause of the injury. See Prosser, Torts § 65 (3d Ed.1964). Fault, or liability, in the area of negligence, requires not only that defendant be negligent, but that this negligence be a proximate cause of the injury of which complaint is made. These are precisely the issues on the question of liability which were raised by the pleadings and upon

which the case was tried and submitted to the jury.

▮ Plaintiff also urges that because Gallegos made no objection to an instruction on contributing or concurring proximate causes, she cannot now be heard to complain that plaintiff failed to prove the acts of Gallegos caused or contributed to cause the death. There would be more merit to this position had the jury returned a verdict for plaintiff and Gallegos were now seeking a reversal on the ground that plaintiff had failed to prove the acts of Gallegos caused, or contributed to cause, the death. However, plaintiff is the one who is seeking the reversal, and her position is that because Gallegos failed to object to an instruction on proximately concurring causes, she thereby waived her right to object to the giving of an instruction on last clear chance because of the failure of plaintiff to prove the cause of death. Plaintiff cites no authority to support this position, and we reject it.

Plaintiff cites Trefzer v. Stiles, 56 N.M. 296, 243 P.2d 605 (1952); Crespin v. Albuquerque Gas & Electric Co., 39 N.M. 473, 50 P.2d 259 (1935); Gilbert v. New Mexico Const. Co., 39 N.M. 216, 44 P.2d 489 (1935). These cases all support the proposition that two or more negligent tortfeasors may be held responsible for injuries caused by their concurring negligence. But that is not the issue. The jury found for Maes, as well as for Gallegos, and there is absolutely no evidence that the acts of Gallegos contributed to the death, which is the injury involved.

▮ Plaintiff further urges " * * * that a person is presumed to continue to live until sufficient proof of death is produced, and defendant MAES' observation would not meet this criterion, 22 AM. JUR.2d, Death, Sec. 294." The effect of this argument is to relieve plaintiff entirely of her burden to prove the cause of death and to shift it to Gallegos in order to avoid liability. This is inconsistent with the issues as framed by the pleadings and upon which the case was tried, and inconsistent with plaintiff's burden of proving all the essential elements of her case.

Section 294 in 22 Am.Jur.2d, Death (1965), states, generally, principles relative to the presumption of continued life on the issue of survivorship. This is entirely different from a wrongful death claim wherein the burden is on plaintiff to prove that the claimed wrongful act was the proximate cause of the death. See the following cases so holding and which, like the present case, involved two separate accidents in which decedent was involved: Woodward v. Blythe, 246 Ark. 765, 439 S.W.2d 919 (1969); Frye v. City of Detroit, 256 Mich. 466, 239 N.W. 886 (1932); Lane v. Bryan, 246 N.C. 108, 97 S.E.2d 411 (1957). See also James v. Sunshine Biscuits, Inc., 402 S.W.2d 364 (Mo.1966); New Mexico Uniform Jury Instructions, UJI 3.1, UJI 11.3 (1966).

It is true that New York has ruled " ' * * * in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence * * * ' " and " ' * * * that the proof of the death of a person, known to be once living, is incumbent upon the party who asserts his death; for it is presumed that he still lives, until the contrary be proved'." Rodak v. Fury, 31 A.D.2d 816, 298 N.Y.S.2d 50 (1969). The source of this New York rule on the presumption of continuing life appears to be In Re Shupack's Estate, 158 Misc. 873, 287 N.Y.S. 184 (1936). How the ruling in the Shupack case, concerning disposition of a decedent's estate, was transported and adopted into wrongful death actions is not entirely clear.

In any event, New York apparently stands alone. In a wrongful death case, and particularly in the present case, it is plaintiff who is asserting the death as a proximate result of the act of defendant.

Certain language in the first portion of the opinion in Lee v. Augusta Coach Com-

pany, 223 Ga. 72, 153 S.E.2d 429 (1967), might be suggestive of a presumption of continued life. However, the case did not turn on any presumption, but rather upon the sufficiency of the evidence, when properly construed, to support a jury finding that the collision contributed to the death of plaintiff's husband.

Here we have no evidence that decedent was alive at the time the Gallegos car struck the body. The only evidence on this question is that he was dead at the time. As was stated in Ellsworth Brothers Truck Lines, Inc. v. Canady, 245 Ark. 1055, 437 S.W.2d 243 (1969), which language was quoted with approval in Woodward v. Blythe, supra:

> " 'It is not sufficient to show that the injuries suffered *might* have been caused when appellant's vehicle hit the rear of the Heaggan automobile. This causal connection between a plaintiff's damages and the defendant's negligence must be established by direct or circumstantial evidence, and it cannot be proved by conjecture or speculation. (citing cases),' "

In the absence of substantial evidence that Gallegos' act in running over the body proximately caused the death, it was not error for the trial court to refuse the instruction on last clear chance as to this defendant. It may very well be that the jury verdict, insofar as Gallegos is concerned, was predicated upon this absence of proof that her act proximately contributed to cause the death.

Plaintiff's second point relates only to Maes, and under which plaintiff claims error on the part of the trial court in refusing to give a requested instruction to the effect that if the jury found Maes was under the influence of intoxicating liquor, he was negligent as a matter of law. We need not and do not rule on the propriety of such an instruction if the evidence were sufficient to support a finding that Maes was under the influence of intoxicating liquor.

Plaintiff relies entirely upon the fact that Maes consumed six beers during a period of about two hours; his failure to see decedent until just before the impact, and then just as a shadow; his statement to one of the investigating officers that he wished to consult his attorney before discussing the facts of the accident; and the fact that this officer said he could smell liquor on Maes' breath.

The officer, when asked if he had " * * * any evidence that he [Maes] was intoxicated at this time * * *", answered in the negative. The other investigating officer talked with Maes for three or four minutes and he could smell no liquor on Maes' breath, observed nothing about his behavior which indicated he had been drinking, and gave it as his opinion that Maes was not under the influence of alcohol.

The failure to see decedent under the existing circumstances, until just before the impact, is not a sufficient basis for the inference that Maes was under the influence of intoxicating liquor. Nor can the mere consumption of about six beers during the two hour period give rise to any such inference.

Plaintiff relies upon State v. Sisneros, 42 N.M. 500, 82 P.2d 274 (1938). The court therein defined "under the influence of intoxicating liquor" within the meaning of the statute, but nothing stated therein could possibly be construed as announcing a rule under which the evidence in the present case could be considered as substantial on the question of whether Maes was under the influence of intoxicating liquor.

As to the testimony by the one officer that he could smell liquor on Maes' breath, it was admitted by Maes that he had been drinking beer. Certainly an odor of liquor on one's breath is not a sufficient basis for inferring he was under the influence of intoxicating liquor. If any inference as to intoxication or sobriety can be drawn from Maes' request to see a lawyer under the circumstances, we would be inclined to favor an inference of sobriety.

The trial court did not err in refusing the requested instruction.

Under her third point, plaintiff urges error on the part of the trial court in refusing to give her Requested Instruction No. 8, which was as follows:

"No. 8—There was in force in the state at the time of the occurrence in question a statute, being Section 68–18–1.1 of the New Mexico Statutes, which provided that:

"'68–18–1.1. *Speed restrictions*—No person shall drive a vehicle on a highway at a speed greater than as follows:

"'In every event speed shall be so controlled as may be necessary to avoid colliding with any person * * * on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'

"If you find from the evidence that the defendant conducted himself in violation of this statute, you are instructed that such conduct constituted negligence as a matter of law."

Plaintiff relies upon Langenegger v. McNally, 50 N.M. 96, 171 P.2d 316 (1946), and Lujan v. Reed, 78 N.M. 556, 434 P.2d 378 (1967), and urges the language therein shows that " * * * [e]xceeding the speed limit, however, is not a requisite for the giving of the instruction."

Even admitting the instruction to be proper in form, which we do not decide, the mere fact that the statute requires, as stated in the Langenegger case, that vehicles " * * * may only be operated at such speed as shall be consistent at all times with safety and the proper use of the roads * * *" did not compel the giving of the instruction. There is no evidence that either defendant was violating the maximum speed limit of 45 miles per hour, and there is no evidence that either was driving at a speed inconsistent with the exercise of due care and the proper use of the highway. Excessive speed under the prevailing conditions is not inferable from the mere fact that the accidents happened. In our opin-ion the evidence does not raise a jury question as to whether either defendant was driving at a speed which amounted to a failure to exercise due care in violation of § 64–18–1.1, N.M.S.A.1953 (Repl. 9, pt. 2), from which the requested instruction was taken, or in violation of § 64–18–1.1, N.M. S.A.1953 (Repl. 9, pt. 2, Supp.1969), which is the amended form of this statute. Compare Butcher v. Safeway Stores, Inc., 78 N.M. 593, 435 P.2d 212 (Ct.App.1967).

Under her fourth point, plaintiff claims the trial court erred in failing to give either her requested instruction No. 5 or 7, which were identical and relate to the matter of keeping a proper lookout. She also requested another instruction in the form of N.M. UJI 9.3, and this instruction was given. N.M. UJI 9.2, which immediately precedes N.M. UJI 9.3 in New Mexico Uniform Jury Instructions, Civil, supra, was not requested, even though in "Directions for Use" under N.M. UJI 9.2 it is stated: "if, the 'proper lookout' phrase is used, then instruction U.J.I. 9.3 should also be used."

If plaintiff wished a specific instruction on the duty of an operator of a vehicle using the public highways to exercise ordinary care at all times to keep a proper lookout, she should have requested an instruction in the form of UJI 9.2. Rule of Civil Procedure 51(1) (c) and (e) [§ 21–1–1(51) (1) (c) and (e), N.M.S.A.1953 (Supp.1969)]. The two identical instructions which she did request, and which were refused, were taken from California Jury Instructions, and covered not only the duty to keep a proper lookout, but the matters covered in N.M. UJI 9.3 (which was requested by her and given), and also additional matters such as speed, control, etc.

In making her objections to the court's failure to give her Requested Instruction No. 5, which objections were adopted as her objections to the court's refusal to grant her identical Request No. 7, she stated: "The plaintiff objects and excepts to the Court's refusal to grant Requested Instruction No. 5 relating to lookout and

states that the Uniform Jury Instruction and lookout also was not given * * *."

Nothing further was said about the Uniform Jury Instructions, and no specific reference was made to N.M. UJI 9.2. No written request in the form of N.M. UJI 9.2, or even in a comparable form, was ever made. If plaintiff wished any such instruction, it was her duty to submit it in writing, and not merely make a general statement that the Uniform Jury Instruction was not given. Rule of Civil Procedure 51(1) (f) [§ 21-1-1(51) (1) (f), N.M.S.A.1953 (Supp.1969)]; Lujan v. McCuistion, 55 N.M. 275, 232 P.2d 478 (1951).

Under these circumstances, plaintiff cannot be heard to complain that the court failed to give her requested instruction, which was not only erroneous, but was repetitious of her prior requested instruction, which the court stated would be given and was given. Compare Lujan v. Reed, supra; Adams v. Lopez, 75 N.M. 503, 407 P.2d 50 (1965); Pfleiderer v. City of Albuquerque, 75 N.M. 154, 402 P.2d 44 (1965); Childers v. Southern Pacific Company, 20 N.M. 366, 149 P. 307 (1915).

Under her final point, plaintiff asserts error on the part of the trial court in permitting a State Police Officer, who was assisting in the investigation, to testify as follows:

"Q. Did you find any evidence that Mr. Maes was negligent?

"MR. GUTIERREZ: If the Court please, I object. That is invading the province of the jury.

"THE COURT: I think he has a right to ask the investigating officer, sure.

"A. I didn't find any evidence. My limits were just to assist."

Plaintiff relies upon Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337 (1960), as holding that the admission into evidence of a question and answer such as are here involved constitutes reversible error. In that case the court stated the answer of a witness:

"* * * was properly objectionable because it stated that he would place the burden of responsibility on the people operating the tunnel, etc. This is not an expression of an opinion on an ultimate issue of fact but is expressing an opinion on a matter of law, and it is not the function of any witness to state where the responsibility, burden or negligence is in any given case."

Although the question and answer here involved differ greatly, from the testimony held to be objectionable in the Beal case, we, nevertheless, are of the opinion that the trial court should not have permitted the witness to evaluate what he had found in terms of whether it constituted negligence or absence of negligence. However, as shown by the question and answer, this witness was limited to merely assisting in the investigation, and his answer was limited to only what he found or failed to find. Considering all the evidence, and the instructions given by the court concerning the consideration which the jury was to give it, we are of the opinion the error committed, in permitting the question to be asked and answered, was harmless.

It follows from what we have said that the judgment must be affirmed.

It is so ordered.

SPIESS, C. J., concurs.

HENDLEY, J., (dissenting).

HENDLEY, Judge (dissenting).

I dissent from that part of the majority opinion concerning defendant Gallegos for the following reasons.

The majority states: "[h]ere we have no evidence that decedent was alive at the time the Gallegos car struck the body. The only evidence on this question is that he was dead at the time." I do not so interpret the evidence.

The only evidence in the record regarding life or death prior to the Gallegos impact is from defendant Maes. Maes testi-

fied regarding his time to observe decedent as follows:

"Q. Did you stand near the body right there when you got down from the car and ran to the body, about 10 seconds?

"A. No, I stated that it was 10 seconds. I know you are going to bring it out, but it could have been less.

"Q. And it could have been ten seconds?

"A. Well, let's say it was just about the time that—I didn't have time to do anything, just to try and signal the car to stop.

"Q. But my question, Mr. Maes, is whether you were there standing by the body about ten seconds?

"A. Yes, I'll say, yes."

Maes then testified as to his observation of decedent:

"Q. And you can sit down now. Thank you. When you arrived at the location of the body, which you placed as somewhere around here, did you —you stayed 10 seconds there—I am sure you are not standing there with your stop watch. You don't know, you just stood there but you did have time to observe the body?

"A. Yes.

"Q. Was the body at the time absolutely motionless?

"A. From what I noticed, yes.

"Q. Was there any sound whatever emanating or coming from the body?

"A. Not that I heard.

"Q. Did you observe any signs of life whatever at that time?

"A. No.

"Q. And that was prior to your seeing this car coming down from the south?

"A. Yes.

"Q. You didn't have too much time to wave, I believe you said. Didn't you testify the car was almost on you when you started waving?

"A. Well, he wasn't almost on me but he was close.

"Q. What would characterize as close in car lengths, one car length, two car lengths?

"A. I'd say three or four car lengths.

"Q. Three or four car lengths. So that at any speed at all you had very little time to wave, is that not correct?

"A. Yes."

Gallegos testified she was travelling 35 or 40 miles per hour prior to the impact.

Further, there is no testimony in the record that the impact of the Maes vehicle would have been sufficient to cause death. Maes' observation of the body for about ten seconds, after the shock of having struck a human being and under the pressure of an on-coming car, is not evidence of death. Maes merely noticed a motionless body. Bodies can be motionless for numerous reasons.

*Presumption of Life.*

Plaintiff is entitled to the use of presumptions in proving his case. There is a presumption of life of the decedent until proof of death. Rodak v. Fury, 31 A.D.2d 816, 298 N.Y.S.2d 50 (1969). A presumption of fact is merely an inference of fact adduced from customary human experience on proof of circumstances that usually or necessarily attend such fact. Once a condition is known or shown to exist it will be presumed to continue until the contrary is established by evidence. Slone-Carter Grain Co. v. Jones, 56 N.M. 712, 248 P.2d 1065 (1952); Petrakis v. Krasnow, 54 N.M. 39, 213 P.2d 220 (1949); Barrows v. Mutual Life Ins. Co. of New York, 48 N.M. 206, 147 P.2d 362 (1944); McClendon v. Dean, 45 N.M. 496, 117 P.2d 250 (1941); Board of Trustees of Town of Casa Colorado Land Grant v. Pooler, 38 N.M. 87, 28 P.2d 519 (1933); Corcoran v. Albuquerque Traction Co., 15 N.M. 9, 103 P. 645 (1909); Collected cases 31A C.J.S. Evidence § 124 (1964).

I see no logical reason why if life was shown at a given time (prior to impact of

Maes) that it should not continue until evidence to the contrary is introduced (death after Gallegos impact). Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067 (1959). Any other conclusion would be contrary to established case law on the use and meaning of presumptions.

This presumption of fact, totally unrebutted by the evidence, was sufficient to take the issue of proximate cause to the jury.

*Last Clear Chance of Gallegos.*

Since plaintiff pleaded last clear chance and had evidence to support his theory, the trial court's refusal to give plaintiff's instruction on last clear chance was reversible error. Burnham v. Yellow Checker Cab, Inc., 74 N.M. 125, 391 P.2d 413 (1964).

We must view this evidence in a light most favorable to plaintiff. Burnham v. Yellow Checker Cab, Inc., supra.

(1) Decedent's negligence was of a continuing nature. Compare Burnham v. Yellow Checker Cab, Inc., supra.

(2) As a result of his negligence he was in a position of peril from which he could not escape by the exercise of ordinary care. He need not know of his peril. Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405 (1954).

(3) That defendant knew or *should have known* of decedent's peril. In *Burnham* the cab driver did not see plaintiff but under the facts and reasonable inferences the jury was not bound by his denial. The same is true here. Maes was standing in the road waving and Gallegos did not see him. Gallegos was turned talking to a backseat passenger.

(4) Defendant had the last clear chance by the exercise of ordinary care to avoid the injury and failed to do so. See Merrill v. Stringer, supra.

*Wrongful Death Action.*

Thus, viewing the evidence from the posture of last clear chance the jury could properly decide a wrongful death action, and determine if there was any wrongful conduct on the part of Gallegos, and whether that wrongful conduct resulted in the death of decedent.

I respectfully dissent.